**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**



|  |  |  |
|---|---|---|
| METACLUSTER LT, UAB. | § § § § § § | |
| *Plaintiff,* | | |
| v. | § | **CASE NO. 2:22-CV-011-JRG-RSP** |
| BRIGHT DATA LTD., | § § | **JURY TRIAL DEMANDED** |
| *Defendant.* | § § § | |

**BRIGHT DATA'S ANSWER TO PLAINTIFF'S**
**SECOND AMENDED COMPLAINT FOR PATENT INFRINGEMENT**

Bright Data Ltd. ("Bright Data") hereby files this Answer to the Second Amended Complaint for Patent Infringement ("Complaint") by Plaintiff Oxylabs, UAB ("Plaintiff"), formerly known as Metacluster LT, UAB, and states as follows:

Bright Data denies the allegations and characterizations in Plaintiff's Complaint unless expressly admitted in the following paragraphs.

**PARTIES**

1.      Bright Data admits, on information and belief, that Plaintiff Metacluster LT, UAB was an entity organized and existing under the laws of the Republic of Lithuania.  Based on Plaintiff's amended corporate disclosure, Bright Data denies the remaining allegations in paragraph 1.

2.      Bright Data admits that it is an entity organized and existing under the laws of Israel with its principal place of business at 4 Hamahshev St., Netanya 4250713, Israel and that Bright Data

1

designs, manufactures, makes, uses, provides, imports into the United States, sells and/or offers for sale products and/or services including Bright Data's Web Scraper IDE, formerly known as Data Collector, Web Unlocker, SERP API, Datasets and proxy services including residential proxies, datacenter proxies, ISP proxies and mobile proxies. Bright Data admits that in its Complaint, Oxylabs defines the Accused Products as including the Data Collector and related proxy networks, the Web Unlocker and related proxy networks and the Search Engine Crawler and related proxy networks. Bright Data further admits that in its Complaint, Oxylabs defines Datasets as an "Accused Product to the extent that it uses and/or relies on one of the Accused Products identified above, or any products that provide the functionality identified herein." Bright Data's website speaks for itself. Bright Data denies the remaining allegations in paragraph 2.

## JURISDICTION AND VENUE

3.      Bright Data admits that Plaintiff has filed claims under the patent laws of the United States, including 35 U.S.C. § 101 *et seq*., but Bright Data denies any remaining allegations in Paragraph 3 of the Complaint.

4.      Bright Data admits that the Court has subject matter jurisdiction under 28 U.S.C. §§ 1331, 1367, and 1338(a).

5.      Bright Data admits that this Court has personal jurisdiction over Bright Data in this case. Bright Data's website speaks for itself. Bright Data denies any remaining allegations in Paragraph 5 of the Complaint.

6.      Bright Data admits that Oxylabs has defined "Accused Products" in this Complaint to include Bright Data's proxy networks and that Bright Data's proxy networks include proxies

2

located in the United States and Texas. Bright Data also admits that it has filed patent infringement lawsuits in this Court against Plaintiff. Bright Data denies any remaining allegations in Paragraph 6 of the Complaint.

7.     Bright Data denies the allegations in Paragraph 7 of the Complaint.

8.     Bright Data admits that venue in this case is proper, and that Bright Data has filed patent-infringement lawsuits in the Eastern District of Texas against Metacluster, n/k/a Oxylabs and other parties. Bright Data denies any remaining allegations in Paragraph 8 of the Complaint.

## FACTS

9.     Bright Data admits that Plaintiff provides proxy services. Bright Data is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 9 and, therefore, denies the remaining allegations in Paragraph 9 of the Complaint.

10.     Bright Data is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 10 and, therefore, denies the allegations in Paragraph 10 of Complaint.

11.     Bright Data admits that its website speaks for itself and that Bright Data's proxy services include residential proxies, data center proxies, ISP proxies and mobile proxies, but Bright Data denies the allegations in Paragraph 11 of the Complaint.

12.     Bright Data admits that, on its face, the '948 Patent is titled "Smart Proxy Rotator," issued on March 24, 2020, that A. Martynas Juravicius and Eivydas Vilcinskas are named as inventors of the '948 Patent, and that the '948 Patent application (No. 16/669,149) on its face indicates that it

3

was filed on October 30, 2019, as well as that it indicates that it is a continuation of application No. 16/590,040, filed on October 1, 2019.  Bright Data is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 12 and, therefore, denies the remaining allegations in Paragraph 12 of the Complaint.

13.    Bright Data admits that it filed a Petition for *Inter Partes* Review of the '948 Patent on May 21, 2021 and that Plaintiff did not accuse Bright Data of infringing the '948 Patent before Oxylabs filed the complaint initiating this action on January 7, 2022.  Bright Data denies the remaining allegations in Paragraph 13 of the Complaint.

14.    Bright Data admits that the Petition for *Inter Partes* Review of the '948 Patent speaks for itself but denies the remaining allegations of Paragraph 14 of the Complaint.

15.    Bright Data admits that the document speaks for itself but denies the remaining allegations of Paragraph 15 of the Complaint.

16.    Bright Data admits that the document speaks for itself but denies the remaining allegations of Paragraph 16 of the Complaint.

17.    Bright Data admits that the document speaks for itself but denies the remaining allegations of Paragraph 17 of the Complaint.

18.    Bright Data denies the allegations of Paragraph 18 of the Complaint.

19.    Bright Data admits that, on its face, the '498 Patent is titled "Web Page Script Management" and on its face indicates that it issued on November 22, 2016, with Erik John Burckart, Robert Madey, Jr., Victor S. Moore, and Joseph Wham Ziskin named as inventors, and

that the '498 Patent application (No. 13/248,615) on its face indicates that it was filed September 29, 2011. Bright Data is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 19 and, therefore, denies the remaining allegations in Paragraph 19 of the Complaint.

20.    Bright Data admits that, on its face, the '091 Patent is titled "Web Page Script Management" and indicates on its face that it issued on December 6, 2016, with Erik John Burckart, Robert Madey, Jr., Victor S. Moore, and Joseph Wham Ziskin named as inventors, and that the '091 Patent application (No. 14/546,398) on its face indicates that it was filed November 18, 2014 as a continuation of application No. 13/429,754, which the '091 Patent further indicates is a continuation of application No. 13/248,615, filed on September 29, 2011. Bright Data is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 20 and, therefore, denies the remaining allegations in Paragraph 20 of the Complaint.

21.    Bright Data is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21 and, therefore, denies the remaining allegations in Paragraph 21 of the Complaint.

22.    Bright Data admits that the operative complaint refers to the '948 Patent, the '498 Patent, and the '091 Patent as the "Asserted Patents."

23.    The allegations in paragraph 23 of the Complaint set forth a legal conclusion for which no response is required.  To the extent a response is required, Bright Data denies the allegations in paragraph 23 of the Complaint.

24.    Bright Data denies the allegations in Paragraph 24 of the Complaint.

**Accused Data Collector Product**

25.    Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 25 of the Complaint

26.    Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 26 of the Complaint.

27.    Bright Data admits that the document speaks for itself, but Bright Data denies the remaining allegations in Paragraph 27 of the Complaint.

28.    Bright Data admits that the webpages speak for themselves, but Bright Data denies the remaining allegations in Paragraph 28 of the Complaint.

29.    Bright Data admits that the document speaks for itself, but Bright Data denies the remaining allegations in Paragraph 29 of the Complaint.

30.    Bright Data admits that the document speaks for itself, but Bright Data denies the remaining allegations in Paragraph 30 of the Complaint.

31.    Bright Data admits that the document speaks for itself, but Bright Data denies the remaining allegations in Paragraph 31 of the Complaint.

32.    Bright Data admits that the webpages speak for themselves, but Bright Data denies the remaining allegations in Paragraph 32 of the Complaint.

33.    Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 33 of the Complaint.

34.    Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 34 of the Complaint.

35.    Bright Data admits that its webinar speaks for itself, but Bright Data denies the remaining allegations in Paragraph 35 of the Complaint.

36.    Bright Data admits that its webinar speaks for itself, but Bright Data denies the remaining allegations in Paragraph 36 of the Complaint.

### Accused Web Unlocker Product

37.    Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 37 of the Complaint

38.    Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 38 of the Complaint.

39.    Bright Data admits that the document speaks for itself, but Bright Data denies the remaining allegations in Paragraph 39 of the Complaint.

40.    Bright Data admits that its webinar speaks for itself, but Bright Data denies the remaining allegations in Paragraph 40 of the Complaint.

41.    Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 41 of the Complaint.

**Accused Search Engine Crawler Product**

42.    Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 42 of the Complaint

43.    Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 43 of the Complaint.

44.    Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 44 of the Complaint.

45.    Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 45 of the Complaint.

46.    Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 46 of the Complaint.

**Proxy Networks**

47.    Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 47 of the Complaint.

48.    Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 48 of the Complaint.

49.    Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 49 of the Complaint.

50. Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 50 of the Complaint.

51. Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 51 of the Complaint.

52. Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 52 of the Complaint.

53. Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 53 of the Complaint.

54. Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 54 of the Complaint.

55. Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 55 of the Complaint.

56. Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 56 of the Complaint.

57. Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 57 of the Complaint.

58. Bright Data denies the allegations in Paragraph 58 of the Complaint.

59. Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 59 of the Complaint.

60.     Bright Data denies the allegations in Paragraph 60 of the Complaint.

61.     Bright Data denies the allegations in Paragraph 61 of the Complaint.

62.     Bright Data denies the allegations in Paragraph 62 of the Complaint.

63.     Bright Data denies the allegations in Paragraph 63 of the Complaint.

64.     Bright Data is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 64 and, therefore, denies the allegations in Paragraph 64 of the Complaint.

65.     Bright Data admits Plaintiff served a document titled Disclosures Pursuant to Patent Rules 3-1 and 3-2 on May 4, 2022, but  Bright Data denies the remaining allegations in Paragraph 65 of the Complaint, including that the May 4, 2022 disclosures satisfied Patent Rule 3-1.  For example, the charts attached to the May 4, 2022 document does not identify "specifically where each element of each asserted claim is found within each Accused Instrumentality."

66.     Bright Data admits Plaintiff served a document titled First Amended Disclosures Pursuant to Patent Rules 3-1 and 3-2 on January 20, 2023.  Bright Data denies the remaining allegations in Paragraph 66 of the Complaint, including that the January 20, 2023 disclosures satisfied Patent Rule 3-1.  For example, the charts attached to the January 20, 2023 document does not identify "specifically where each element of each asserted claim is found within each Accused Instrumentality."

## COUNT I
**(Claim for Patent Infringement of the '948 Patent)**

67.     Bright Data incorporates by reference its answers to all the foregoing paragraphs as if fully set forth herein.

68.     Bright Data admits that a copy of the '948 Patent is attached to the Complaint.

69.     Bright Data admits that claims in an issued patent generally are entitled to a presumption of validity as a matter of law. Bright Data denies the remaining allegations in Paragraph 69 of the Complaint.

70.     Bright Data is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 70 and, therefore, denies the allegations in Paragraph 70 of the Complaint.

71.     Bright Data admits that paragraph 71 recites claim 1 of the '948 Patent.

72.     Bright Data denies the allegations in Paragraph 72 of the Complaint.

73.     Bright Data denies the allegations in Paragraph 73 of the Complaint.

74.     Bright Data denies the allegations in Paragraph 74 of the Complaint.

75.     Bright Data admits it was aware of the '948 Patent by the filing of its Petition for *Inter Partes* Review of the '948 Patent in May 2021.  Bright Data denies the remaining allegations in Paragraph 75 of the Complaint.

76.     Bright Data admits that its website speaks for itself, but Bright Data denies the remaining allegations in Paragraph 76 of the Complaint.

77.     Bright Data denies the allegations in Paragraph 77 of the Complaint.

78.     Bright Data denies the allegations in Paragraph 78 of the Complaint.

79.     Bright Data denies the allegations in Paragraph 79 of the Complaint.

## COUNT II
### (Claim for Patent Infringement of the '498 Patent)

80.     Bright Data repeats and incorporates by reference its answers to all the foregoing paragraphs as if fully set forth herein.

81.     Bright Data admits that a copy of the '498 Patent is attached to the Complaint.

82.     Bright Data admits that claims in an issued patent generally are entitled to a presumption of validity as a matter of law. Bright Data denies the remaining allegations in Paragraph 82 of the Complaint.

83.     Bright Data is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 83 and, therefore, denies the remaining allegations in Paragraph 83 of the Complaint.

84.     Bright Data admits that paragraph 71 recites claim 1 of the '498 Patent.

85.     Bright Data admits that it offers the Accused Products for sale in the United States.  Bright Data denies the remaining allegations in Paragraph 85 of the Complaint.

86.     Bright Data denies the allegations in Paragraph 86 of the Complaint.

87.     Bright Data denies the allegations in Paragraph 87 of the Complaint.

88.     Bright Data admits it had notice of the '498 Patent following the filing of Plaintiff's original complaint.  Bright Data denies the remaining allegations in Paragraph 88 of the Complaint.

89.     Bright Data admits that the webpages speak for themselves, but Bright Data denies the remaining allegations in Paragraph 89 of the Complaint.

90.     Bright Data denies the allegations in Paragraph 90 of the Complaint.

91.     Bright Data denies the allegations in Paragraph 91 of the Complaint.

92.     Bright Data denies the allegations in Paragraph 92 of the Complaint.

## COUNT III
**(Claim for Patent Infringement of the '091 Patent)**

93.     Bright Data repeats and incorporates by reference its answers to all the foregoing paragraphs as if fully set forth herein.

94.     Bright Data admits that a copy of the '091 Patent is attached to the Complaint.

95.     Bright Data admits that claims in an issued patent generally are entitled to a presumption of validity as a matter of law. Bright Data denies the remaining allegations in Paragraph 95 of the Complaint.

96.     Bright Data is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 96 and, therefore, denies the remaining allegations in Paragraph 96 of the Complaint.

97.     Bright Data admits that paragraph 97 recites claim 1 of the '091 Patent.

98.     Bright Data denies the allegations in Paragraph 98 of the Complaint.

99.     Bright Data denies the allegations in Paragraph 992 of the Complaint.

100.    Bright Data denies the allegations in Paragraph 100 of the Complaint.

101.    Bright Data admits it had notice of the '091 Patent following the filing of Plaintiff's original complaint.  Bright Data denies the remaining allegations in Paragraph 101 of the Complaint.

102.    Bright Data admits that the webpages speaks for themselves, but Bright Data denies the remaining allegations in Paragraph 102 of the Complaint.

103.    Bright Data denies the allegations in Paragraph 103 of the Complaint.

104.    Bright Data denies the allegations in Paragraph 104 of the Complaint.

105.    Bright Data denies the allegations in Paragraph 105 of the Complaint.

## JURY DEMAND

106.     Bright Data admits that Plaintiff is entitled to request a trial by jury on issues so triable but denies that Plaintiff is entitled to any relief for its Complaint.

## PRAYER FOR RELIEF

107.     Bright Data denies that Plaintiff is entitled to the relief requested or to any other relief against Bright Data.  To the extent a further response to Plaintiff's prayer is necessary, Bright Data denies each and every allegation set forth in Plaintiff's Prayer for Relief (Paragraphs A through I, inclusive).

## AFFIRMATIVE DEFENSES

108.    Bright Data will rely on all defenses lawfully available to it at the time of trial including the defenses listed below.  To the extent the defenses below raise matters on which Plaintiff bears the burden of proof at trial, Bright Data does not adopt or assume that burden by virtue of its pleading Bright Data expressly states that its affirmative defenses are made without prejudice to any denial in its Answer, and without admission to any allegation in the Complaint, unless expressly admitted above.  Bright Data reserves the right to assert additional defenses that would be rendered appropriate in view of future discovery, information, and/or analysis.

### FIRST AFFIRMATIVE DEFENSE
### (Failure to State a Claim)

109.    The Complaint fails to state a claim, or claims, upon which relief may be granted against Bright Data.

### SECOND AFFIRMATIVE DEFENSE
### (No Injunctive Relief)

110.    Plaintiff's claims for injunctive or other equitable relief are barred because there is an adequate remedy at law, because any alleged injury to Plaintiff is not immediate or irreparable, and because Plaintiff's claims otherwise fail to meet the requirements for such relief.

### THIRD AFFIRMATIVE DEFENSE
### (No Infringement)

111.    Bright Data has not directly or indirectly infringed, contributed to the infringement of, or induced the infringement of any valid and enforceable claim of the '948, '498, and '091 Patents.

15

112.    To the extent Plaintiff continues to assert that Bright Data indirectly infringes, either by contributory infringement or inducement of infringement, Bright Data is not liable to Plaintiff for the acts alleged to have been performed before Bright Data knew that its actions would cause indirect infringement.

**FOURTH AFFIRMATIVE DEFENSE**
**(Invalidity)**

113.    The claims of the '948, '498, and '091 Patents are invalid, ineligible, and/or void for failure to meet the conditions for patentability set forth in 35 U.S.C. §§ 101 *et seq.* and, more particularly, failure to comply with the requirements of 35 U.S.C. §§ 101, 102, 103, 112, et. seq., and/or the Rules and Regulations of the U.S. Patent & Trademark Office set forth in Title 37 of the Code of Federal Regulations.

**FIFTH AFFIRMATIVE DEFENSE**
**(Prosecution History Estoppel)**

114.    Plaintiff is barred, based on statements, representations, and admissions made during prosecution of the patent applications resulting in the '948, '498, and '091 Patents and in post-grant proceedings of the same patents before the United States Patent and Trademark Office and/or Patent Trial and Appeal Board  from asserting any interpretation of any valid, enforceable claim of the '948, '498, or '091 Patents would be broad enough to cover any Bright Data product alleged to infringe the '948, '498, or '091 Patents, either literally or under the doctrine of equivalents.

## SIXTH AFFIRMATIVE DEFENSE
### (No Willful Infringement)

115.    Bright Data has not willfully infringed the '948, '498, and '091 Patents and Plaintiff cannot recover increased damages pursuant to 35 U.S.C. § 284.

## SEVENTH AFFIRMATIVE DEFENSE
### (Marking)

116.    To the extent that Plaintiff, its predecessors in interest, and/or licensees of the Asserted Patents failed to properly mark any of their relevant products as required by 35 U.S.C. § 287 or otherwise give proper notice that Bright Data's actions allegedly infringed the '948, '498, and '091 Patents, Bright Data is not liable to Plaintiff for the acts alleged to have been performed before Bright Data received actual notice that it was allegedly infringing the '948, '498, and '091 Patents.

## EIGHTH AFFIRMATIVE DEFENSE
### (Prior Commercial Use – 35 U.S.C. § 273)

117.    Plaintiff's claims of infringement are barred under 35 U.S.C. § 273 to the extent that Plaintiff's theory of infringement in view of the Court's anticipated claim construction order covers Bright Data services in commercial use in the United States at least one year before the effective filing date of the claimed invention.

## NINTH AFFIRMATIVE DEFENSE
### (Ensnarement)

118.    Plaintiff's claims of infringement under the doctrine of equivalents are barred under the ensnarement doctrine, which bars Plaintiff from asserting an infringement theory under the doctrine of equivalents that encompasses, or "ensnares," the prior art.

## TENTH AFFIRMATIVE DEFENSE
### (Claim Construction Estoppel)

119.    Plaintiff is estopped from construing the claims of the '948, '498, and '091 Patents to cover any product, service, or conduct offered or performed by or on behalf of Bright Data or  its affiliates because representations, omissions, and/or concessions made  during original and post-grant prosecution of the '948, '498, and '091 Patents to limit the scope of the claims of the '948, '498, and '091 Patents.

## ELEVENTH AFFIRMATIVE DEFENSE
### (No Lost Profits)

120.    Plaintiff is not entitled to lost profits as damages for any alleged infringement of the Asserted Patents to the extent that Plaintiff does not offer a product in the United States that practices any claim of any Asserted Patents.

## TWELFTH AFFIRMATIVE DEFENSE
### (Unenforceability)

121.    The '948 Patent is unenforceable due to inequitable conduct and/or patent misuse on the part of Plaintiff both during the prosecution of the application that led to the '948 Patent before the U.S. Patent and Trademark Office ("USPTO") and in post-grant review proceedings before the Patent Trial and Appeal Board ("PTAB").  Plaintiff breached its duty of candor and good faith required by 37 C.F.R. § 1.56, with the intent to deceive the PTAB and the Examiner, by making material statements to the PTAB inconsistent and irreconcilable with statements to this Court and by omitting required material information during prosecution of the application which led to the

18

'948 Patent.  In both instances, Plaintiff's improper actions prevented the claims of the '948 Patent from being held invalid or not allowed.

122.    The '948 Patent is also unenforceable due to patent misuse.  Plaintiff is asserting the '948 Patent against Bright Data that plaintiff knows or should know to be invalid, and claiming infringement which Plaintiff knows or should know does not exist.  Plaintiff is using this suit to anticompetitive effect to prevent its principal competitor, Bright Data, from offering its products for sale to the public in the United States.

**Oxylabs Withheld Material Information Regarding Bright Data's Products and Patents from the U.S.P.T.O. During Prosecution of the '948 Patent**

123.    Upon information and belief, Oxylabs has been tracking Bright Data's products and patents for years before the filing of the '948 Patent application on October 31, 2019.

124.    Since 2014, Bright Data has offered proxy-based services relying on its patented residential proxy network, which allows customers to use a pool of Internet Protocol ("IP") addresses associated with real consumer devices like laptops and smart phones.

125.    Before creating its own data center proxy network, Bright Data, then known as Hola Networks Ltd. ("Hola"), offered a data center proxy service using data center IPs supplied by Oxylabs, then known as Tesonet, UAB.  Oxylabs continued supplying data center proxy IPs to Bright Data's data center network until Bright Data terminated the agreement over a year before Oxylabs filed the application for the '948 Patent.

126.    Bright Data's proxy services and Bright Data's Web Unlocker product were all publicly available and sold before Oxylabs filed the application for the '948 Patent.  Upon information and belief, Oxylabs was aware of Bright Data's products, including the Web Unlocker product accused

of infringement in this case, before the named inventors developed any of the asserted claims of the '948 Patent and before Oxylabs filed its application for the '948 Patent.

127.    Upon information and belief, Oxylabs introduced a competing residential proxy service at least as early as 2017 based on Bright Data's products.[1]  On June 1, 2017, outside counsel for Bright Data, then Hola Networks, sent a letter to Oxylabs' founder and CEO Mr. Okmanas (Exhibit A) identifying Bright Data patents including U.S. Patent No. 9,241,044 ("'044 Patent").

128.    On July 19, 2018, Bright Data (known then as Luminati Networks Ltd.) brought suit against Plaintiff (then known as Tesonet, UAB) for patent infringement in this Court.  *See Luminati Networks Ltd. v. UAB Tesonet*, Case No. 2:18-cv-00299-JRG, Dkt. No. 1.  Bright Data's complaint asserted, *inter alia*, that certain of Plaintiff's products infringed certain claims of U.S. Patent No. 9,241,044 (the "'044 Patent") and that Bright Data itself practiced claims of the '044 Patent.  The parties litigated this case until it was dismissed pursuant to a joint stipulation of dismissal in February 2020.

129.    The '044 Patent discloses fetching content from a web server to a client device using tunnel devices serving as intermediate devices. Ex. B, '044 Patent, at Abstract. The client devices access an acceleration server to receive a list of available tunnel devices. *Id*. The selection of tunnel devices to be used by a client device may be in the acceleration server. *Id*. The '044 Patent teaches "load balancing" as an advantage. Ex. B at 1:61-63; 51:4-7; 72:21-40; 117:66-118:10. The '044 Patent teaches a transaction log may be prepared by the client device and sent (after each transaction or after multiple transactions) to the acceleration server 32. Ex. B at 96:19-27. The

---

[1] In a November 5, 2021 jury verdict, Oxylabs's competing residential proxy service was found by a jury to infringe one or more Bright Data patents asserted in subsequent litigation.  *Bright Data Ltd. v. Teso LT, UAB et al*., Case No. 2:19-cv-00395, ECF No. 516.

'044 Patent teaches the selection of tunnel devices may be based on information relating to former transactions involving the tunnel devices. Ex. B, at 96:50-62. The '044 Patent also teaches the selection of the tunnel device, or the priorities assigned to them, may be based on available communication attributes or their history. Ex. B at 89:61-90:24. The '044 Patent also teaches encryption, including "onion routing" which prevents intermediary nodes from knowing the origin, destination, and contents of a message. Ex. B at 25:34-42, 27:26-33.

130.   On October 30, 2019, Plaintiff filed U.S. Patent Application No. 16/669,149 which led to the '948 Patent.[2]  Thus, when Plaintiff filed the application for what ultimately became the '948 Patent, Plaintiff (a) was knowledgeable about Bright Data's products including through Oxylabs' previous relationship supplying data center proxies to Bright Data's network; (b) upon information and belief knew about the Web Unlocker product then available for sale and accused of infringement in this case; and (c) had been litigating with Bright Data on Bright Data's '044 Patent for over 15 months.  Despite Plaintiff's familiarity with Bright Data's products and patents, Plaintiff failed to disclose Bright Data's products, including Web Unlocker, or any of Bright Data's patents, including the '044 Patent, during prosecution of the application that led to Plaintiff's '948 Patent.  Based on Plaintiff's intimate knowledge of Bright Data's Web Unlocker product (now accused of infringing the '948 Patent) and Bright Data's '044 Patent, Plaintiff's failure to disclose this material information to the USPTO was intentional.

131.   Plaintiff's failure to disclose Bright Data's products or patents is particularly egregious as, during prosecution of the application that led to the '948 Patent, the Examiner informed Plaintiff during an Interview on January 7. 2020 that no prior art was identified upon which to base a

---

[2] The application for the '948 Patent is continuation of U.S Patent Application No. 16/590,040, filed on October 1, 2019.

rejection. *See* Ex. C, File History excerpt for the '948 Patent, at META0000090 ("Examiner explained that he did not give a prior-art rejection, because a search was made and no art surfaced that could be used to make a prior-art rejection, and that the lack of a prior-art rejection was not an oversight."). Such a statement from the Examiner during prosecution should have immediately prompted Plaintiff to disclose Bright Data's prior art systems and patents (*e.g.,* the '044 Patent). Plaintiff's failure here to respond to the Examiner with known prior art provides further evidence of Plaintiff intentionally failing to disclose Bright Data's products and patents.

132.    Based on the positions regarding the '948 Patent claim scope in this case, including but not limited to in the operative complaint and infringement contentions, upon information and belief, Plaintiff knew that Bright Data's products and patents, including the '044 Patent, were material to patentability of Plaintiff's '948 Patent. For example, this materiality is evident from Oxylabs infringement allegations against the same Web Unlocker product and Bright Data's subsequent petition for *Inter Partes* Review ("IPR") of the '948 Patent. The IPR petition asserted, *inter alia*, that Bright Data's '044 Patent was prior art to the '948 Patent and anticipated claims 10 and 14 of Plaintiff's '948 Patent and, in combination with other prior art references, rendered obvious claims 1-3, 7, 10, 12, 14, 17, and 18 of Plaintiff's '948 Patent. *See* Ex. D, Petition for *Inter Partes* Review, IPR2021-00983, dated May 21, 2021, at 38-67. But for Plaintiff's failure to disclose Bright Data's products and patents to the USPTO, the claims cited above would not have been allowed by the USPTO.

133.    Only after the '948 Patent issued on March 24, 2020, did Plaintiff inform the USPTO of the '044 Patent. On December 1, 2021, Plaintiff filed with the USPTO in the record for the '948 Patent, the PTAB's institution decision for Bright Data's petition which included the '044 Patent as prior art.

134.    Plaintiff's failure to disclose the Bright Data prior art products and/or prior art patents to the USPTO during the prosecution of the application which led to the '948 Patent was intentional as Plaintiff was very familiar with Bright Data's products and '044 Patent before Plaintiff even filed the application which led to its '948 Patent.  Plaintiff cannot justify its failure to disclose these material prior art references to the USPTO.

135.    The '948 Patent is unenforceable due to inequitable conduct, as Plaintiff breached its duty of candor and good faith required by 37 C.F.R. § 1.56, with the intent to deceive the Examiner, by intentionally failing to disclose prior art material to patentability to the USPTO including Bright Data's products, including the Web Unlocker product accused of infringing the '948 Patent in this case, and Bright Data's patents (e.g. '044 Patent).

**Oxylabs Engaged in Inequitable Conduct Before the Patent and Trademark Appeal Board And/Or Patent Misuse By Taking Contradictory Positions Before the PTAB and District Court**

136.    On May 21, 2021, Bright Data filed a Petition for *Inter Partes* Review of all claims of the '948 Patent.  Bright Data asserted that each claim of the '948 Patent was anticipated and/or rendered obvious by a number of prior art references.

137.    Importantly, every claim of the '948 Patent requires a "proxy provider" and a "proxy" so that pleading infringement requires accusing a system or method which meets the recited "proxy provider" elements. For example, claim 1 of the '948 Patent recites (emphasis added):

A computer-implemented method for dynamically configuring a utilization threshold of a **proxy provider**, the method comprising:
    running a smart proxy rotator (SPR) on a computing device connected to a network;
    obtaining a **proxy** from the SPR, according to currently valid SPR operational settings, by a Web Scraper to use for a request for content;
    establishing, by the Web Scraper, an encrypted connection to a target server

23

through the **proxy**;
requesting and obtaining the content designated within the request, through the
encrypted connection, by the Web Scraper;
providing, by the Web Scraper, performance and availability information of the
**proxy** to the SPR;
calculating, at the SPR, a weight for the **proxy provider**; and
dynamically configuring utilization threshold of the **proxy provider** based on
the calculation.

Ex. B, claim 1.

138.    In its September 7, 2021 preliminary response ("POPR") to a petition for *Inter Partes*

Review of the '948 Patent ("IPR"), Plaintiff argued that the terms (a) "Proxy Provider" should be

construed as "the party providing the actual proxy as a service" and (b) "utilization threshold"

should be construed as "the portion of all proxy requests received by the SPR during a time period

that the SPR will refer to a **particular proxy provider**." *See* Dkt. No. 32, Ex. A, Patent Owner

Preliminary Response ("POPR"), IPR2021-00983, Patent No. 10,601,948 B1, at 20 (PTAB Sept.

7, 2021) (emphasis added).    To overcome the prior art in the petition, Plaintiff further asserted

that the prior art does not disclose the use of an SPR to select a "Proxy Provider," because the prior

art merely involved selection among a "subset of proxies," rather than selection among parties

"providing the actual proxy as a service." *See id.* at 32–33; *see also id.* at 33 ("Petitioner fails to

assert—let alone establish—that any of Smith's subset of proxies correspond to 'the party

providing the actual proxy as a service,' which the '948 Patent defines as a proxy provider."); *id.*

("…a POSITA would understand therefore that all of the proxies of Smith belong to *the same*

*organization* …. For at least these reasons, the Petition does not show – and Smith does not

disclose - that Smith's subset of proxies corresponds to a 'party providing the actual proxy as a

service.'") (emphasis added) *id.* at 34 ("Petitioner fails to establish that Smith discloses a proxy

provider and, therefore, cannot show that Smith discloses calculating a weight for the proxy

provider or configuring a utilization threshold for a proxy provider."); Ex. B, at 2:44–46 (distinguishing "a set of proxies" from a "proxy provider," because a "proxy provider can control the quality of proxies and decide which Internet Protocol (IP) addresses are going to be served by a set of proxies used by clients"); *id.* at 2:58–63 ("[W]hile some [prior] systems operate individual proxies, managing lists of proxies and helping select an individual proxy for a particular user or user device for a prolonged session, these systems do not provide for an abstraction layer of proxies comprising a logical entity of a proxy provider, and managing proxy service access on a larger scale.").

139.    To prevail in the PTAB, Plaintiff clearly disclaimed any interpretation of "proxy providers" that could be met by a "subset of proxies":

> Indeed, Smith only describes that [sic] subset of proxies are merely a group of proxies which were assigned the same success label by computing device 200. In other words, the subset is simply an organized collection (*i.e.*, database) of proxies that is arranged by computing device 200 according to whether the last attempt to contact a particular device within the firewalled network was successful not according to respective proxy providers. The subset, in and of itself, fails to include any mechanism which would allow it to perform any functions, such as providing a proxy as a service.

Dkt. No. 32, Ex. A, POPR, IPR2021-00983 at 33.

140.    In declining to institute the IPR, the PTAB largely adopted Plaintiff's arguments, including Plaintiff's distinguishing of "proxy provider(s)" from "proxies." The PTAB construed the terms (a) "Proxy Provider" as "a server party providing an actual proxy as a service," and (b) "utilization threshold" as "a maximum percentage of use assigned to a particular proxy provider that is equal to a weight for the **particular proxy provider** divided by the sum of respective weights assigned to all proxy providers during the same time period." *See* Dkt. No. 32, Ex. B, Decision Denying Institution, IPR2021-00983 at 13-15 (PTAB Dec. 1, 2021) (emphasis added).

141.    As Plaintiff successfully argued before the PTAB, the '948 Patent explicitly "defines the term 'Proxy Provider' as 'the party providing the actual proxy as a service.'" Dkt. No. 32, Ex. A, POPR, at 20. In the words of Plaintiff, a "subset of proxies are merely a group of proxies which were assigned the same success label . . .." *Id.* at 33. "The subset, in and of itself, fails to include any mechanism which would allow it to perform any functions, such as providing a proxy as a service." *Id.* "[T]he subset is simply an organized collection (*i.e.*, database) of proxies that is arranged by [a] computing device [] according to whether the last attempt to contact a particular device within the firewalled network was successful—not according to respective proxy providers." *Id.*

142.    Despite these specific representations to the PTAB regarding the construction of "proxy provider," Plaintiff applied in this Court a completely different interpretation of "proxy provider" in identifying the "proxy provider" of the Bright Data accused products than that used by the PTAB in denying institution of Bright Data's petition for *Inter Partes* Review.  *See generally* Dkt. No. 37, Plaintiff Response to Bright Data's Motion to Dismiss the First Amended Complaint (June 8, 2022).  Plaintiff now "contends that the various proxy providers of the Accused Data Collector Product are the server parties providing an actual proxy as a service."  *Id*. at 5 (emphasis added), *see also id*. at 11.  Plaintiff further stating, in direct contradiction to its representations to the PTAB, that that "proxy providers should include [] the servers, whether internal or third party, that provide BD's various types of proxies as a service (e.g., datacenter, residential, static residential, mobile, etc.) as well as the various servers that facilitate the geographic distribution of BD's proxy offerings (e.g., Texas datacenter proxies versus California datacenter proxies)." *Id*. at 11 (emphasis added).

143.    Plaintiff's position that it has taken with respect to "proxy providers" before this Court is irreconcilable with Plaintiff's disclaimer of a subset of proxies as a proxy server before the PTAB which was the basis for the PTAB's denial of institution of Bright Data's petition.  *See* Dkt. No. 32, Ex. B, Decision Denying Institution, IPR2021-00983 at 13-15 (PTAB Dec. 1, 2021).

144.    Plaintiff's representations before the PTAB breached Plaintiff's duty of candor and good faith required by 37 C.F.R. § 1.56, with the intent to deceive the PTAB. As stated above, Plaintiff's statements were material and, but for Plaintiff's improper statements to the PTAB regarding "proxy providers," the PTAB would have instituted Bright Data's petition for *Inter Partes* Review of the '948 Patent and ultimately held that the claims of the '948 Patent were invalid.

145.    Following the PTAB's December 1, 2021, decision denying institution of the IPR of the '948 Patent, Plaintiff filed the original complaint in this action on January 7, 2022.  Plaintiff's intent to deceive the PTAB is evident in Plaintiff's statements to this Court, only nine months after its statements to the PTAB, of a completely and irreconcilably different interpretation of the term "proxy provider" in the claims of the '948 Patent.  Moreover, Plaintiff knew of the significance of its statements to the PTAB as Plaintiff's interpretation of "proxy provider" was the basis for the PTAB's decision to deny institution of Bright Data's petition for *Inter Partes* Review of all claims of the '948 Patent.

146.    The '948 Patent is unenforceable due to inequitable conduct because the Plaintiff breached its duty of candor and good faith required by 37C.F.R. § 1.56, with the intent to deceive the PTAB, by making material statements to the PTAB inconsistent and irreconcilable with statements to this Court regarding the term "proxy provider" of the claims of the '948 Patent.

147.    The '948 Patent is also unenforceable due to patent misuse.  Plaintiff is asserting the '948 Patent against Bright Data that plaintiff knows or should know to be invalid, and claiming infringement which Plaintiff knows or should know does not exist.  Plaintiff is using this suit to anticompetitive effect to prevent its principal competitor, Bright Data, from offering its products for sale to the public in the United States.  For example, Plaintiff advertises this litigation through its website at https://oxylabs.io/legal-timeline and https://oxylabs.io/blog/oxylabs-sues-bright-data-in-patent-infringement-case.

Oxylabs has filed the lawsuit against Bright Data given Oxylabs' belief that its competitor infringes on Oxylabs' patents claiming Smart Proxy Rotator and web script management technologies for the provisioning of web scraping and other business services.

To promote fair, transparent, and legal marketplace practices, Oxylabs seeks to redress the injuries it has suffered and hold Bright Data accountable for its actions. Julius Cerniauskas, Oxylabs' Chief Executive Officer, has commented on the issue:

> Oxylabs is committed to principles of ethics and fairness in the proxy marketplace. That includes respecting valid intellectual property rights. With this lawsuit, we have made it known to Bright Data that it must respect Oxylabs' existing and growing patent portfolio. We believe that Bright Data's unfair business practices stifle innovation and competition, leading to potential market monopolization.
>
> Julius Cerniauskas, Oxylabs' Chief Executive Officer

Ex. E, https://oxylabs.io/blog/oxylabs-sues-bright-data-in-patent-infringement-case.

148.    As discussed in Paragraphs 136-146, Plaintiff argued to the PTAB that the '948 Patent explicitly "defines the term 'Proxy Provider' as 'the party providing the actual proxy as a service.'" *See* Dkt. No. 32, Ex. A, Patent Owner Preliminary Response ("POPR"), IPR2021-00983, Patent No. 10,601,948 B1, at 20, 32-24 (PTAB Sept. 7, 2021). The PTAB relied on Plaintiff's statements and denied institution of Bright Data's Petition for *Inter Partes* Review of the '948 Patent.  *See*

Dkt. No. 32, Ex. B, Decision Denying Institution, IPR2021-00983 at 13-15 (PTAB Dec. 1, 2021) (emphasis added).

149.    Subsequent to the denial of institution of Bright Data's petition, Plaintiff presented an entirely different and contradictory interpretation of "proxy provider" to this Court. *See* Dkt. No. 37, Plaintiff Response to Bright Data's Motion to Dismiss the First Amended Complaint (June 8, 2022) at 5, 11. Plaintiff's statements to this Court confirm that Plaintiff knew that the claims of the '948 Patent were invalid if Plaintiff had used an interpretation of "proxy provider" before the PTAB that was consistent with its statements to this Court, and that Plaintiff knew or should have known it was claiming infringement which Plaintiff knows or should know does not exist.

150.    Further, Plaintiff knew or should have known that any attempt to accuse Bright Data's products of infringing claims of the '948 Patent amounts to patent misuse as Plaintiff was aware that under the interpretation of "proxy provider" Plaintiff provided to this Court, the claims of the '948 Patent would be invalid, and that Plaintiff knew or should have known it was claiming infringement which Plaintiff knows or should know does not exist.

151.    Bright Data is the leading provider of proxy services in the United States, providing a cloud service connecting tens of millions of devices over the Internet through a proxy-based network. Bright Data utilizes this network to provide proxy-based services to its customers. Plaintiff is a competitor of Bright Data for providing proxy services. Plaintiff is asserting the invalid '948 Patent in an anticompetitive manner to attempt to preclude Bright Data from offering certain products, and thus open opportunities for increased sales and market share for Plaintiff in the proxy services market.

152.    Plaintiff's actions in asserting the '948 Patent constitute patent misuse as Plaintiff knows or should know that the '948 Patent is invalid based on its own material improper statements to the PTAB and this Court, and Plaintiff is asserting this invalid patent, and a patent that was not infringed, for anticompetitive reasons.

## RESERVATION OF DEFENSES

153.    Bright Data hereby reserves any and all defenses that are available under the Federal Rules of Civil Procedure and the U.S. Patent Laws and any other defenses, in law or in equity that may now exist or become available as a result of discovery and further factual investigation during this litigation.

## BRIGHT DATA'S COUNTERCLAIMS

1.    Defendant Bright Data, Ltd. ("Bright Data"), counterclaims against Plaintiff Oxylabs, UAB ("Plaintiff or Oxylabs"), formerly known as Metacluster LT, UAB, as follows:

## THE PARTIES

2.    Bright Data is an entity organized and existing under the laws of Israel with its principal place of business at 4 Hamahshev St., Netanya 4250713, Israel.

3.    Upon information and belief, Oxylabs is an entity organized and existing under the laws of the Republic of Lithuania with its principal place of business at A. Goštauto g. 40A, LT-03163, Vilnius, Lithuania.

**JURISDICTION AND VENUE**

4.      This is a counterclaim for declaratory judgment for non-infringement and/or invalidity arising under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.*

5.      This Court has personal jurisdiction over Oxylabs. Oxylabs is the named plaintiff in this action. By filing its Complaint, Oxylabs has consented to the personal jurisdiction of this Court.

6.      This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. §§ 1331, 1338 and 2201.

7.      An actual and justiciable controversy exists concerning at least: (1) the non-infringement of U.S. Patent Nos. 10,601,948 (the "'948 Patent"), 9,503,498 (the "'498 Patent"), 9,516,091 (the "'091 Patent"); and (2) the invalidity of the '948, '498, and '091 Patents.

8.      Venue is proper in this district under 28 U.S.C. §§ 1391 (b) and (c).

**FACTUAL ALLEGATIONS**

9.      Derry Shribman and Ofer Vilenski are the sole inventors of a number of patents, including U.S. Patent Nos. 11,206,317 (Exhibit F, "'317 Patent") issued on December 21, 2021.

10.     The '317 Patent is titled "System Providing Faster and More Efficient Data Communication" and issued from application No. 17/332,290, which was a continuation of application No. 16/600,505, which was a continuation of application No. 16/278,109, which was a continuation of application No. 15,957,950, which was a continuation of application No. 14/025,109, which was a division of application No. 12/836,059, which was filed on July 14, 2010 and claims priority to provisional application No. 61/249,624, filed on October 8, 2009.    Bright

31

Data identifies its patents including on its website at https://luminati.io/patent-marking#system-and-method-for-streaming-content-from-multiple-servers. Bright Data is the assignee and sole owner of the Asserted Patents.

11. The '317 Patent was the subject of an *inter partes* review petition filed by Plaintiff Metacluster, n/k/a Oxylabs, on April 29, 2022. On December 1, 2022, the PTAB denied institution of Plaintiff's petition determining that Metacluster did not demonstrate a reasonable likelihood that it would prevail in showing the unpatentability of at least one of the challenged claims. Ex. G at 2. On February 2, 2023, the PTAB denied Metacluster's petition for a rehearing. Ex. H at 10.

12. Since 2014, Bright Data has offered proxy-based services relying on its patented residential proxy network, which allows customers to use a pool of Internet Protocol ("IP") addresses associated with real consumer devices like laptops and smart phones. Before creating its own data center proxy network, Bright Data, then known as Hola Networks Ltd. ("Hola"), offered a data center proxy service using data center IPs supplied by Oxylabs, then known as Tesonet, UAB. Oxylabs continued supplying data center proxy IPs to Bright Data's data center network until Bright Data terminated the agreement over a year before Oxylabs filed the application for the '948 Patent.

13. Upon information and belief, Oxylabs introduced a competing residential proxy service at least as early as 2017 based on Bright Data's products. On June 1, 2017, outside counsel for Bright Data, then Hola Networks, sent a letter to Oxylabs' founder and CEO Mr. Okmanas (Exhibit A) identifying Bright Data patents including U.S. Patent No. 9,241,044 ("'044 Patent").

14. Oxylabs touts itself as offering "top-tier web data collection infrastructure" including "proxy networks" and an "advanced proxy solution" of "Web Unlocker." https://oxylabs.io/. As

explained on Oxylabs' website, "[w]hen a proxy is involved, instead of communication taking place between your computer and the server, the computer's request to obtain a file or web page occurs through the proxy server before being sent to the requesting computer." Ex. I.



Ex. I.

15.    Oxylabs offers various proxy services supporting the ability to select a geographic location for a request including, but not limited to, Oxylabs's "Residential Proxies," "Mobile Proxies," "Shared Datacenter Proxies" and "Web Unlocker" as well as Oxylabs' Proxy Extension for Chrome and Proxy Manager for Android ("Accused Oxylabs Services").  Upon information and belief, each of the Accused Oxylabs Services allow customers to fetch multiple web pages from different web servers providing a method for fetching, by a first device, such as a customer's device, a first web-page that is identified by a first Uniform Resource Locator (URL) and is stored in a first web server and a second web-page that is identified by a second URL and is stored in a second web server.

## What is a Residential Proxy

Residential Proxy network is a proxy network that contains real IP addresses provided by Internet Service Providers (ISPs). These IP addresses are attached to physical locations across the globe at a country or a city level. Requests coming from residential proxies stand out for their legitimacy, allowing you to gather public data efficiently.

Ex. J



Ex. K

## Wide IP pool for essential target access

Access a 29,000 shared proxy pool and reach targets in the US, Europe and Asia. Utilize any IP to establish **unlimited concurrent sessions** and get the results in seconds. Make no compromises on quality or reliability, and execute your web scraping project with no limitations.

https://oxylabs.io/products/datacenter-proxies/shared                                          2/12

Ex. L



Ex. M

16.     Upon information and belief, the Accused Oxylabs Services use a second device that stores a group of Internet Protocol (IP) addresses, with each of the IP addresses being associated with a respective geographical location.  For example, Oxylabs touts its services as allowing the customer to send a request with a selected geographic location, including for example the United States.

## Select Country

⋮

✓ **Residential** ✓ **Mobile** ✓ **Rotating ISP**

Adding a `cc` flag to the authorization header enables one to specify which country IP to use to process the request. The value of this parameter is a case insensitive country code in 2-letter **3166-1 alpha-2 format**. For example, `DE` for Germany, `GB` for the United Kingdom, and `TH` for Thailand proxy. See the examples for more details.

Ex. N

**Single backconnect entry**

A single backconnect proxy gives you access to a continuously rotating proxy pool, allowing you to control sessions and avoid IP bans and CAPTHCAs. In return, an average of 99.95% success rates are guaranteed for your scraping projects.

https://oxylabs.io/products/residential-proxy-pool

**State and city-level targeting**

Our Residential Proxy network covers 195 locations and offers country, city, and state-level geo-location targeting. Oxylabs proxies help access geo-restricted content without extra charge.

Ex. J

## Mobile Proxies

✓ Filter mobile IP addresses by country and ASN

✓ Access IP addresses from real mobile devices

✓ Avoid IP blocks with automatic IP rotation

Ex. K

## Shared Datacenter Proxies

✓ Instant access to a 29,000 proxy pool

✓ Fifteen geo-locations in the US, Europe and Asia

✓ Cost-effective and easy to set up

35

Ex. L

## Select Country

⋮

Oxylabs Shared Datacenter Proxies currently offer fifteen different countries to choose from. A random country-specific proxy entry point returns new IP with every new request.

These are the available countries to choose from:



| 🇺🇸 USA | 🇩🇪 Germany | 🇫🇷 |
| --- | --- | --- |
| dc.us-pr.oxylabs.io:30000 | dc.de-pr.oxylabs.io:40000 | dc.fr-pr.oxy |

Ex. O

## Making Requests

⋮

```
curl -k -x unblock.oxylabs.io:60000 "https://example.com"
```

The easiest way to start is to send a simple query without custom options. We will add all standard headers on our end, pick the fastest proxy, and deliver you the response body.

To utilize additional functionalities of Web Unblocker, such as setting up proxy location or reusing the same IP for a few consecutive requests, please send additional headers with the request.

Here's the full list of supported functionalities and headers:

Ex. P

## Geo-location

If you want to specify from which location to access a particular website, add the `x-oxylabs-geo-location` header.

Ex. Q

17.    Upon information and belief, a first device, such as the device of a customer of Accused Oxylabs Services, identifies a first URL and a first geographical location.  As shown above, each of Accused Oxylabs Services include a pool of IP addresses associated with geographical locations.  Further, Accused Oxylabs Services support the first device sending a first URL and first geographical location.  In addition, each of the Accused Oxylabs Services cause the first device to receive from the second device, a first web-page, in response to the first device sending the first URL and the first geographical location.  Finally, each of the Accused Oxylabs Services support repeated requests allowing the first device to identify a second URL and second geographical location that is associated with at least one of the IP address in the group, the sending of the second URL and second geographical location to the second device, and the receiving of a second web-page from the second device in response to the sending of the second URL and the second geographical location to the second device.

18.    Upon information and belief, Oxylabs provides instructions on how to operate the Accused Oxylabs Services, including how to send URLs and geographical locations as part of a customer's request in using the Accused Oxylabs Services.  In addition, upon information and belief, Plaintiff provides software applications, including Oxylabs's Proxy Manager App for Android and Proxy Extension for Chrome, for customers to install on their devices to allow Oxylabs' customers to implement the Accused Oxylabs Services using Oxylabs' software installed directly on the customers' devices.



https://oxylabs.io/products/chrome-proxy-extension



https://oxylabs.io/products/proxy-manager-app

### FIRST COUNTERCLAIM
**(Declaratory Judgment of Non-Infringement of the '948, '498, and '091 Patents)**

19.    Bright Data incorporates all preceding paragraphs of its Counterclaims as if fully set forth herein.

38

20.     An actual controversy exists between Bright Data and Oxylabs concerning whether Bright Data's activities directly or indirectly infringe or have infringed any valid, enforceable claims, if any, of the '948, '498, or '091 Patents.

21.     Bright Data has not infringed, either directly, indirectly, contributorily, or by inducement, any valid, enforceable claim, if any, of the '948, '498, or '091 Patents.

22.     Bright Data's activities do not infringe, either directly, indirectly, contributorily, or by inducement, any valid, enforceable claim, if any, of the '948, '498, or '091 Patents.

23.     A judicial declaration of non-infringement is necessary and appropriate to resolve this controversy.

24.     Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Bright Data requests a declaration by the Court that Bright Data does not infringe any valid, enforceable claims, if any, of the '948, '498, and '091 Patents, either directly, indirectly, contributorily, or by inducement, so that Bright Data can ascertain its rights and duties with respect to designing, developing, marketing, licensing and selling its products and/or services.

### SECOND COUNTERCLAIM
**(Declaratory Judgment of Invalidity of the '948, '498, and '091 Patents)**

25.     Bright Data incorporates all preceding paragraphs of its Counterclaims as if fully set forth herein.

26.     An actual controversy exists between Bright Data and Oxylabs concerning whether the '948, '498, and '091 Patents are invalid for failing to meet one or more of the requirements for patentability set forth in 35 U.S.C. §§ 101, 102, 103 and/or 112 et. seq.

39

27.    The claims of the '948, '498, and '091 Patents are invalid for failing to satisfy one more of the conditions of patentability set forth in Title 35 of the United States Code, including §§ 101, 102, 103, 112, 254 and/or 255, and the rules, regulations and laws pertaining thereto in view of at least the prior art identified during prosecution.

28.    A judicial declaration of invalidity is necessary and appropriate to resolve this controversy.

29.    Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 et seq., Bright Data requests a declaration by the Court that the claims of the '948, '498, and '091 Patents are invalid for failing to meet one or more of the requirements for patentability set forth in 35 U.S.C. §§ 101, 102, 103 and/or 112 et. seq.

### THIRD COUNTERCLAIM
**(Declaratory Judgment of Unenforceability of the '948 Patent)**

30.    Bright Data incorporates all preceding paragraphs of its Affirmative Defenses and Counterclaims as if fully set forth herein.

31.    An actual controversy exists between Bright Data and Oxylabs concerning whether the '948 Patent is unenforceable due to inequitable conduct and/or patent misuse.

32.    The '948 Patent is unenforceable due to inequitable conduct on the part of Plaintiff both during the prosecution of the application that led to the '948 Patent before the U.S. Patent and Trademark Office ("USPTO") and in post-grant review proceedings before the Patent Trial and Appeal Board ("PTAB"). Plaintiff breached its duty of candor and good faith required by 37 C.F.R. § 1.56, with the intent to deceive the PTAB and the Examiner, by making material statements to the PTAB inconsistent and irreconcilable with statements to this Court and by omitting required material information during prosecution of the application which led to the '948

Patent.  In both instances, Plaintiff's improper actions prevented the claims of the '948 Patent from being held invalid or not allowed.

### Oxylabs Withheld Material Information Regarding Bright Data's Products and Patents from the U.S.P.T.O. During Prosecution of the '948 Patent

33.     Upon information and belief, Oxylabs has been tracking Bright Data's products and patents for years before the filing of the '948 Patent application on October 31, 2019.

34.     Since 2014, Bright Data has offered proxy-based services relying on its patented residential proxy network, which allows customers to use a pool of Internet Protocol ("IP") addresses associated with real consumer devices like laptops and smart phones.

35.     Before creating its own data center proxy network, Bright Data, then known as Hola Networks Ltd. ("Hola"), offered a data center proxy service using data center IPs supplied by Oxylabs, then known as Tesonet, UAB.  Oxylabs continued supplying data center proxy IPs to Bright Data's data center network until Bright Data terminated the agreement over a year before Oxylabs filed the application for the '948 Patent.

36.     Bright Data's proxy services and Bright Data's Web Unlocker product were all publicly available and sold before Oxylabs filed the application for the '948 Patent.  Upon information and belief, Oxylabs was aware of Bright Data's products, including the Web Unlocker product accused of infringement in this case, before the named inventors developed any of the asserted claims of the '948 Patent and before Oxylabs filed its application for the '948 Patent.

37.      Upon information and belief, Oxylabs introduced a competing residential proxy service at least as early as 2017 based on Bright Data's products.[3]  On June 1, 2017, outside counsel for Bright Data, then Hola Networks, sent a letter to Oxylabs' founder and CEO Mr. Okmanas (Exhibit A) identifying Bright Data patents including U.S. Patent No. 9,241,044 ("'044 Patent").

38.      On July 19, 2018, Bright Data (known then as Luminati Networks Ltd.) brought suit against Plaintiff (then known as Tesonet, UAB) for patent infringement in this Court.  *See Luminati Networks Ltd. v. UAB Tesonet*, Case No. 2:18-cv-00299-JRG, Dkt. No. 1.  Bright Data's complaint asserted, *inter alia*, that certain of Plaintiff's products infringed certain claims of U.S. Patent No. 9,241,044 (the "'044 Patent") and that Bright Data itself practiced claims of the '044 Patent.  The parties litigated this case until it was dismissed pursuant to a joint stipulation of dismissal in February 2020.

39.      The '044 Patent discloses fetching content from a web server to a client device using tunnel devices serving as intermediate devices. Ex. B, '044 Patent, at Abstract. The client devices access an acceleration server to receive a list of available tunnel devices. *Id*. The selection of tunnel devices to be used by a client device may be in the acceleration server. *Id*. The '044 Patent teaches "load balancing" as an advantage. Ex. B at 1:61-63; 51:4-7; 72:21-40; 117:66-118:10. The '044 Patent teaches a transaction log may be prepared by the client device and sent (after each transaction or after multiple transactions) to the acceleration server 32. Ex. B at 96:19-27. The '044 Patent teaches the selection of tunnel devices may be based on information relating to former transactions involving the tunnel devices. Ex. B, at 96:50-62. The '044 Patent also teaches the

---

[3] In a November 5, 2021 jury verdict, Oxylabs's competing residential proxy service was found by a jury to infringe one or more Bright Data patents asserted in subsequent litigation. *Bright Data Ltd. v. Teso LT, UAB et al*., Case No. 2:19-cv-00395, ECF No. 516.

selection of the tunnel device, or the priorities assigned to them, may be based on available communication attributes or their history. Ex. B at 89:61-90:24. The '044 Patent also teaches encryption, including "onion routing" which prevents intermediary nodes from knowing the origin, destination, and contents of a message. Ex. B at 25:34-42, 27:26-33.

40.    On October 30, 2019, Plaintiff filed U.S. Patent Application No. 16/669,149 which led to the '948 Patent.[4] Thus, when Plaintiff filed the application for what ultimately became the '948 Patent, Plaintiff (a) was knowledgeable about Bright Data's products including through Oxylabs' previous relationship supplying data center proxies to Bright Data's network; (b) upon information and belief knew about the Web Unlocker product then available for sale and accused of infringement in this case; and (c) had been litigating with Bright Data on Bright Data's '044 Patent for over 15 months. Despite Plaintiff's familiarity with Bright Data's products and patents Plaintiff failed to disclose Bright Data's products, including Web Unlocker, or Bright Data's patents, including the '044 Patent, during prosecution of the application that led to Plaintiff's '948 Patent. Based on Plaintiff's intimate knowledge of Bright Data's Web Unlocker product (now accused of infringing the '948 Patent) and Bright Data's '044 Patent, Plaintiff's failure to disclose this material information to the USPTO was intentional.

41.    Plaintiff's failure to disclose Bright Data's products or patents is particularly egregious as, during prosecution of the application that led to the '948 Patent, the Examiner informed Plaintiff during an Interview on January 7. 2020 that no prior art was identified upon which to base a rejection. *See* Ex. C, File History excerpt for the '948 Patent, at META0000090 ("Examiner explained that he did not give a prior-art rejection, because a search was made and no art surfaced

---

[4] The application for the '948 Patent is continuation of U.S Patent Application No. 16/590,040, filed on October 1, 2019.

that could be used to make a prior-art rejection, and that the lack of a prior-art rejection was not an oversight."). Such a statement from the Examiner during prosecution should have immediately prompted Plaintiff to disclose Bright Data's prior art systems and patents (*e.g.,* the '044 Patent). Plaintiff's failure here to respond to the Examiner with known prior art provides further evidence of Plaintiff intentionally failing to disclose Bright Data's products and patents.

42.    Based on the positions regarding the '948 Patent claim scope in this case, including but not limited to in the operative complaint and infringement contentions, upon information and belief, Plaintiff knew that Bright Data's products and patents, including the '044 Patent, were material to patentability of Plaintiff's '948 Patent. For example, this materiality is evident from Oxylabs infringement allegations against the same Web Unlocker product and Bright Data's subsequent petition for *Inter Partes* Review ("IPR") of the '948 Patent. The IPR petition asserted, *inter alia*, that Bright Data's '044 Patent was prior art to the '948 Patent and anticipated claims 10 and 14 of Plaintiff's '948 Patent and, in combination with other prior art references, rendered obvious claims 1-3, 7, 10, 12, 14, 17, and 18 of Plaintiff's '948 Patent. *See* Ex. D, Petition for *Inter Partes* Review, IPR2021-00983, dated May 21, 2021, at 38-67. But for Plaintiff's failure to disclose Bright Data's products and patents to the USPTO, the claims cited above would not have been allowed by the USPTO.

43.    Only after the '948 Patent issued on March 24, 2020, did Plaintiff inform the USPTO of the'044 Patent. On December 1, 2021, Plaintiff filed with the USPTO in the record for the '948 Patent, the PTAB's institution decision for Bright Data's petition which included the '044 Patent as prior art.

44.     Plaintiff's failure to disclose the Bright Data prior art products and/or prior art patents to the USPTO during the prosecution of the application which led to the '948 Patent was intentional as Plaintiff was very familiar with Bright Data's products and '044 Patent before Plaintiff even filed the application which led to its '948 Patent.  Plaintiff cannot justify its failure to disclose these material prior art references to the USPTO.

45.     The '948 Patent is unenforceable due to inequitable conduct, as Plaintiff breached its duty of candor and good faith required by 37 C.F.R. § 1.56, with the intent to deceive the Examiner, by intentionally failing to disclose prior art material to patentability to the USPTO including Bright Data's products, including the Web Unlocker product accused of infringing the '948 Patent in this case, and Bright Data's patents (e.g. '044 Patent).

**Oxylabs Engaged in Inequitable Conduct Before the Patent and Trademark Appeal Board And/Or Patent Misuse By Taking Contradictory Positions Before the PTAB and District Court**

46.     On May 21, 2021, Bright Data filed a Petition for *Inter Partes* Review of all claims of the '948 Patent.  Bright Data asserted that each claim of the '948 Patent was anticipated and/or rendered obvious by a number of prior art references.

47.     Importantly, every claim of the '948 Patent requires a "proxy provider" and a "proxy" so that pleading infringement requires accusing a system or method which meets the recited "proxy provider" elements. For example, claim 1 of the '948 Patent recites (emphasis added):

A computer-implemented method for dynamically configuring a utilization threshold of a **proxy provider**, the method comprising:
  running a smart proxy rotator (SPR) on a computing device connected to a
    network;
  obtaining a **proxy** from the SPR, according to currently valid SPR operational
    settings, by a Web Scraper to use for a request for content;
  establishing, by the Web Scraper, an encrypted connection to a target server

through the **proxy**;
requesting and obtaining the content designated within the request, through the encrypted connection, by the Web Scraper;
providing, by the Web Scraper, performance and availability information of the **proxy** to the SPR;
calculating, at the SPR, a weight for the **proxy provider**; and
dynamically configuring utilization threshold of the **proxy provider** based on the calculation.

Ex. B, claim 1.

48.     In its September 7, 2021 preliminary response ("POPR") to a petition for *Inter Partes* Review of the '948 Patent ("IPR"), Plaintiff argued that the terms (a) "Proxy Provider" should be construed as "the party providing the actual proxy as a service" and (b) "utilization threshold" should be construed as "the portion of all proxy requests received by the SPR during a time period that the SPR will refer to a **particular proxy provider**." *See* Dkt. No. 32, Ex. A, Patent Owner Preliminary Response ("POPR"), IPR2021-00983, Patent No. 10,601,948 B1, at 20 (PTAB Sept. 7, 2021) (emphasis added).   To overcome the prior art in the petition, Plaintiff further asserted that the prior art does not disclose the use of an SPR to select a "Proxy Provider," because the prior art merely involved selection among a "subset of proxies," rather than selection among parties "providing the actual proxy as a service." *See id.* at 32–33; *see also id.* at 33 ("Petitioner fails to assert—let alone establish—that any of Smith's subset of proxies correspond to 'the party providing the actual proxy as a service,' which the '948 Patent defines as a proxy provider."); *id.* ("…a POSITA would understand therefore that all of the proxies of Smith belong to *the same organization* …. For at least these reasons, the Petition does not show – and Smith does not disclose - that Smith's subset of proxies corresponds to a 'party providing the actual proxy as a service.'") (emphasis added) *id.* at 34 ("Petitioner fails to establish that Smith discloses a proxy provider and, therefore, cannot show that Smith discloses calculating a weight for the proxy

provider or configuring a utilization threshold for a proxy provider."); Ex. B, at 2:44–46 (distinguishing "a set of proxies" from a "proxy provider," because a "proxy provider can control the quality of proxies and decide which Internet Protocol (IP) addresses are going to be served by a set of proxies used by clients"); *id.* at 2:58–63 ("[W]hile some [prior] systems operate individual proxies, managing lists of proxies and helping select an individual proxy for a particular user or user device for a prolonged session, these systems do not provide for an abstraction layer of proxies comprising a logical entity of a proxy provider, and managing proxy service access on a larger scale.").

49.    To prevail in the PTAB, Plaintiff clearly disclaimed any interpretation of "proxy providers" that could be met by a "subset of proxies":

> Indeed, Smith only describes that [sic] subset of proxies are merely a group of proxies which were assigned the same success label by computing device 200. In other words, the subset is simply an organized collection (*i.e.*, database) of proxies that is arranged by computing device 200 according to whether the last attempt to contact a particular device within the firewalled network was successful not according to respective proxy providers. The subset, in and of itself, fails to include any mechanism which would allow it to perform any functions, such as providing a proxy as a service.

Dkt. No. 32, Ex. A, POPR, IPR2021-00983 at 33.

50.    In declining to institute the IPR, the PTAB largely adopted Plaintiff's arguments, including Plaintiff's distinguishing of "proxy provider(s)" from "proxies." The PTAB construed the terms (a) "Proxy Provider" as "a server party providing an actual proxy as a service," and (b) "utilization threshold" as "a maximum percentage of use assigned to a particular proxy provider that is equal to a weight for the **particular proxy provider** divided by the sum of respective weights assigned to all proxy providers during the same time period." *See* Dkt. No. 32, Ex. B, Decision Denying Institution, IPR2021-00983 at 13-15 (PTAB Dec. 1, 2021) (emphasis added).

47

51.    As Plaintiff successfully argued before the PTAB, the '948 Patent explicitly "defines the term 'Proxy Provider' as 'the party providing the actual proxy as a service.'" Dkt. No. 32, Ex. A, POPR, at 20. In the words of Plaintiff, a "subset of proxies are merely a group of proxies which were assigned the same success label . . .." *Id.* at 33. "The subset, in and of itself, fails to include any mechanism which would allow it to perform any functions, such as providing a proxy as a service." *Id.* "[T]he subset is simply an organized collection (*i.e.*, database) of proxies that is arranged by [a] computing device [] according to whether the last attempt to contact a particular device within the firewalled network was successful—not according to respective proxy providers." *Id.*

52.    Despite these specific representations to the PTAB regarding the construction of "proxy provider," Plaintiff applied in this Court a completely different interpretation of "proxy provider" in identifying the "proxy provider" of the Bright Data accused products than that used by the PTAB in denying institution of Bright Data's petition for *Inter Partes* Review.  *See generally* Dkt. No. 37, Plaintiff Response to Bright Data's Motion to Dismiss the First Amended Complaint (June 8, 2022).  Plaintiff now "contends that the various proxy providers of the Accused Data Collector Product are the server parties providing an actual proxy as a service."  *Id*. at 5 (emphasis added), *see also id*. at 11.  Plaintiff further stating, in direct contradiction to its representations to the PTAB, that that "proxy providers should include [] the servers, whether internal or third party, that provide BD's various types of proxies as a service (e.g., datacenter, residential, static residential, mobile, etc.) as well as the various servers that facilitate the geographic distribution of BD's proxy offerings (e.g., Texas datacenter proxies versus California datacenter proxies)." *Id*. at 11 (emphasis added).

48

53.     Plaintiff's position that it has taken with respect to "proxy providers" before this Court is irreconcilable with Plaintiff's disclaimer of a subset of proxies as a proxy server before the PTAB which was the basis for the PTAB's denial of institution of Bright Data's petition.  *See* Dkt. No. 32, Ex. B, Decision Denying Institution, IPR2021-00983 at 13-15 (PTAB Dec. 1, 2021).

54.     Plaintiff's representations before the PTAB breached Plaintiff's duty of candor and good faith required by 37 C.F.R. § 1.56, with the intent to deceive the PTAB. As stated above, Plaintiff's statements were material and, but for Plaintiff's improper statements to the PTAB regarding "proxy providers," the PTAB would have instituted Bright Data's petition for *Inter Partes* Review of the '948 Patent and ultimately held that the claims of the '948 Patent were invalid.

55.     Following the PTAB's December 1, 2021 decision denying institution of the IPR of the '948 Patent, Plaintiff filed the original complaint in this action on January 7, 2022.  Plaintiff's intent to deceive the PTAB is evident in Plaintiff's statements to this Court, only nine months after its representation to the PTAB, of a completely and irreconcilably different interpretation of the term "proxy provider" in the claims of the '948 Patent.  Moreover, Plaintiff knew of the significance of its statements to the PTAB as Plaintiff's interpretation of "proxy provider" was the basis for the PTAB's decision to deny institution of Bright Data's petition for *Inter Partes* Review of all claims of the '948 Patent.

56.     The '948 Patent is unenforceable due to inequitable conduct because the Plaintiff breached its duty of candor and good faith required by 37C.F.R. § 1.56, with the intent to deceive the PTAB, by making material statements to the PTAB inconsistent and irreconcilable with statements to this Court regarding the term "proxy provider" of the claims of the '948 Patent.

49

## FOURTH COUNTERCLAIM
### (Infringement of the '317 Patent)

57.     Bright Data incorporates all preceding paragraphs of its Affirmative Defenses and Counterclaims as if fully set forth herein.

58.     The '317 Patent entitled "System Providing Faster and More Efficient Data Communication" was duly and legally issued by the U.S. Patent and Trademark Office on December 11, 2021, from application No. 17/332,290 filed on October 13, 2019, which was a continuation of application No. 16/600,505, which was a continuation of application No. 16/278,109, which was a continuation of application No. 15,957,950, which was a continuation of application No. 14/025,109, which was a division of application No. 12/836,059, which was filed on July 14, 2010, and claims priority to provisional application No. 61/249,624, filed on October 8, 2009.   A true and accurate copy of the '317 Patent is attached hereto as Exhibit F.

59.     Each and every claim of the '317 Patent is valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

60.     The '317 Patent was the subject of an *inter partes* review petition filed by Plaintiff Metacluster, n/k/a Oxylabs, on April 29, 2022.  On December 1, 2022, the PTAB denied institution of Plaintiff's petition determining that Metacluster did not demonstrate a reasonable likelihood that it would prevail in showing the unpatentability of at least one of the challenged claims.  Ex. G at 2. On February 2, 2023, the PTAB denied Metacluster's petition for a rehearing.  Ex. H at 10.

61.     Bright Data is the sole owner of the '317 Patent and has rights to past damages.

62.     Claim 1 of the '317 Patent recites:

A method for fetching, by a first device, a first web-page that is identified by a first Uniform Resource Locator (URL) and is stored in a first web server and a second web-page that is identified by a second URL and is stored in a second web server, for use with a second device that stores a group of Internet Protocol (IP) addresses, each of the IP addresses is associated with a respective geographical location, the method comprising:

identifying, at the first device, the first URL and a first geographical location that is associated with at least one of the IP addresses in the group;

sending, by the first device to the second device, the first URL and the first geographical location;

receiving, by the first device from the second device, the first web-page, in response to the sending of the first URL and the first geographical location;

identifying, at the first device, the second URL and a second geographical location that is associated with at least one of the IP addresses in the group;

sending, by the first device to the second device, the second URL and the second geographical location; and

receiving, by the first device from the second device, the second web-page, in response to the sending of the second URL and the second geographical location.

63.     As described in the above paragraphs, upon information and belief, the Accused Oxlyabs Services provide proxy services permitting its customers to fetch web-pages from web servers using proxies selected by geographical location.  As described above, a first device (a) identifies a first URL and a first geographical location that is associated with at least one of the IP addresses in a group; (b) sends to the second device the first URL and the first geographical location; (c) receives from the second device the first web-page in response to the sending of the first URL and the first geographical location; (d) identifies a second URL and a second geographical location; (e) sends to the second device the second URL and the second geographical location; and (f) receives from the second device the second web-page in response to the sending of the second URL and the second geographical location.

Case 2:23-cv-00171-JRG-RSP    Document 2    Filed 04/14/23    Page 52 of 58 PageID #: 53

64.    The '317 Patent includes a number of dependent claims.  In addition to practicing the steps of independent claim 1, upon information and belief Plaintiff and others using the Accused Oxylabs Services also practice at least claims 8, 16, 17, 22, 29 and 30.

65.    Metacluster, n/k/a Oxylabs, has had actual notice of the '317 Patent since at least Metacluster's filing of its IPR petition against the '317 Patent.

66.    Upon information and belief Plaintiff sold, offered to sell, used, tested, and imported and continue to sell, offer to sell, use, test, and import the Accused Oxylabs Services into the United States.  Plaintiff imports software that implements the Accused Oxylabs Services into the United States directly and/or via third parties. Plaintiff's software enables devices to operate the Accused Oxylabs Services.  Plaintiff provides the Accused Oxylabs Services to their customers and other third parties with the knowledge and intent that the implementation of the Accused Oxylabs Services in the U.S. would infringe the '317 Patent.

67.    Plaintiff has been and is now infringing at least directly, indirectly and/or contributorily, one or more claims including at least claims 1, 8, 16, 17, 22, 29 and 30 of the '317 Patent, both literally and/or under the doctrine of equivalents, by implementing the Accused Oxylabs Services in the United States without authority and/or license from Bright Data and are liable to Bright Data under 35 U.S.C. § 271 et seq., including but not limited to under Sections 271(a), (b), (c) and/or (g).  On information and belief, at least since the filing of Metacluster's IPR petition against the '317 Patent, Plaintiff has been aware of the '317 Patent yet has continued to infringe claims of the '317 Patent and has induced infringement among customers of the Accused Oxylabs Services and users of Oxylabs' Proxy Extension for Chrome and Proxy Manager for Android.  On further information and belief, Plaintiff has developed, used, offered to sell and/or sold within the United

States and imported into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, including as one non-limiting example Plaintiff's Proxy Extension for Chrome and Proxy Manager for Android, API and/or any other instructions provided to Plaintiff's customers or third parties that result in infringement.  On further information and belief, Plaintiff also imports and sells as well as cause others to use within the United States a product which is made by a process patented in the United States whereby the importation, offer to sell, sale, and/or use of the product occurs during the term of such process patent.  Such products may include for example, the set of results sent to customers in the United States as created and assembled by the patented methods of the '317 Patent.

68.    As a result of Plaintiff's infringement of the '317 Patent, Bright Data has suffered and continues to suffer damages.  Thus, Bright Data is entitled to recover from Plaintiff the damages Bright Data sustained as a result of Plaintiff's wrongful and infringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court together with increased damages up to three times under 35 U.S.C. § 284.

69.    Bright Data has suffered damages because of the infringing activities of Plaintiff, its officers, agents, servants, employees, associates, partners, and other persons who are in active concert or participation therewith, and Bright Data will continue to suffer irreparable harm for which there is no adequate remedy at law unless Plaintiff's infringing activities are preliminarily and permanently enjoined by this Court.  Bright Data practices the '317 Patent and, on information and belief, practicing the '317 Patent is required for a competitive offering of the Accused Oxylabs

Services. Non-exclusive examples of such damages include loss of market share, lowered prices and the inability of Bright Data to obtain the revenues and profits it would have been able to obtain but for the infringement, lost sales in other services when customers did not purchase proxy services from Bright Data as a result of the infringement, loss of convoyed sales of other related services that Bright Data would have sold but for the infringement, and harm to Bright Data's reputation as a result of Plaintiff's lower quality and less protected offerings damaging the reputation and perception of the residential proxy service market that relies on the technology of the '317 Patent.

70.    Plaintiff's infringement of the '317 Patent is and continues to be deliberate and willful because Plaintiff was and is on notice of the '317 Patent at least as early as Plaintiff's IPR petition against the ''317 Patent, yet Plaintiff continue to infringe the '317 Patent even after its IPR petition was denied. This case should be deemed an exceptional case under 35 U.S.C. § 285, and if so, Bright Data is entitled to recover its attorneys' fees.

## BRIGHT DATA'S PRAYER FOR RELIEF

WHEREFORE, Bright Data respectfully requests a judgment against Plaintiff as follows:

A.    That Plaintiff take nothing as the result of the Complaint;

B.    That the Court enter judgment against Plaintiff and in favor of Bright Data and that Plaintiff's Complaint be dismissed with prejudice;

C.    That judgment be rendered that Plaintiff is not entitled to the relief prayed for in the Complaint, or any relief whatsoever;

D.    A declaration that Bright Data does not infringe, under any theory, any valid claim of the '948, '498, and '091 Patents that might be enforceable;

E.    A declaration that each of the claims of the '948, '498, and '091 Patents is invalid;

F.    A declaration that each of the claims of the '948, '498, and '091 Patents is unenforceable;

G.    Preliminarily and permanently enjoining Plaintiff, its officers, directors, servants, managers, employees, agents, attorneys, successors and assignees, and all persons in active concert or participation with any of them from directly or indirectly charging Bright Data with infringement of the '948, '498, and '091 Patents under any theory;

H.    Declaring that Plaintiff has infringed the '317 Patent;

I.    Preliminarily and permanently enjoining Plaintiff, its officers, directors, servants, managers, employees, agents, attorneys, successors and assignees, and all persons in active concert or participation with any of them from infringing the '317 Patent;

J.    Ordering Plaintiff to pay Bright Data damages under 35 U.S.C. § 284, including supplemental damages for any continuing post-verdict infringement up until entry of the final judgment, with an accounting, as needed;

K.    Ordering Plaintiff to pay Bright Data pre-judgment and post-judgment interest on the damages awarded;

L.    Declaring that in the event a permanent injunction preventing future acts of infringement is not granted, that Bright Data be awarded a compulsory ongoing licensing fee;

55

M.      A declaration that the case is exceptional under 35 U.S.C. § 285 and awarding to Bright

Data its reasonable attorneys' fees pursuant to 35 U.S.C. § 285;

N.      An award to Bright Data for costs of suit; and

O.      Grant Bright Data such additional relief that the Court deems proper and just.

**DEMAND FOR JURY TRIAL**

71.     Bright Data demands trial by jury on all issues so triable.

Dated: February 14, 2023                          By: */s/ Robert Harkins*

                                                  S. Calvin Capshaw
                                                  State Bar No. 03783900
                                                  Elizabeth L. DeRieux
                                                  State Bar No. 05770585
                                                  Capshaw DeRieux, LLP
                                                  114 E. Commerce Ave.
                                                  Gladewater, TX 75647
                                                  Telephone: 903-845-5770
                                                  ccapshaw@capshawlaw.com
                                                  ederieux@capshawlaw.com

                                                  Mark Mann
                                                  Mann | Tindel | Thompson
                                                  300 West Main
                                                  Henderson, TX 75652
                                                  Office 903-657-8540
                                                  mark@themannfirm.com

                                                  Korula T. Cherian
                                                  Robert Harkins
                                                  CA State Bar No. 179525
                                                  Cherian LLP
                                                  2001 Addison St, Ste 275
                                                  Berkeley, CA 94702
                                                  (510) 944-0190
                                                  sunnyc@cherianllp.com

bobh@cherianllp.com

Thomas Dunham
Ronald Wielkopolski
Cherian LLP
1901 L St. NW, Suite 700
Washington, DC 20036
(202) 838-1560
tomd@cherianllp.com
ronw@cherianllp.com

*Attorneys for Defendant*
*Bright Data Networks Ltd.*

## CERTIFICATE OF SERVICE

I hereby certify that the as-filed copy of the foregoing document has been served by CM/ECF on February 14, 2023, on all counsel of record who are deemed to have consented to electronic service pursuant to Local Rule CV-5(a).

*/s/ Robert Harkins*